**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────────

**NADINE JAMES,**

                              **Plaintiff,**                    **11-CV-0713A(Sr)**

**v.**


**UNITED STATES OF AMERICA, GEICO**
**GENERAL INSURANCE COMPANY, and**
**KATE E. LOWENTHAL,**

                              **Defendants.**

─────────────────────────────────────


## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #6.

        In the Amended Complaint in this action (Dkt. #15), brought under the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, plaintiff Nadine James seeks

damages for personal injuries suffered when she was struck by a motor vehicle

operated by defendant Kate E. Lowenthal, M.D., on December 14, 2009, in the City of

Buffalo, New York.  Plaintiff alleges that, at the time of the accident, Dr. Lowenthal was

an employee of defendant United States of America acting within the scope of her

employment as a resident physician at the Department of Veterans's Affairs ("VA")

Hospital in Buffalo.  Plaintiff also seeks declaratory judgment against defendant GEICO

General Insurance Company ("GEICO"), pursuant to the Declaratory Judgment Act, 28

U.S.C. §§ 2201-2202, declaring as improper GEICO's disclaimer of insurance coverage for the accident based on a policy exclusion for persons protected under the FTCA.

Currently before the Court is the government's motion (Dkt. #30) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint against it for lack of subject matter jurisdiction.  Also pending are GEICO's motion (Dkt. #27) and plaintiff's cross-motion (Dkt. #39) pursuant to Fed. R. Civ. P. 56 for summary judgment on the issue as to whether Dr. Lowenthal was acting within the scope of her employment by the United States.  Upon consideration of the record as a whole, including the parties' written submissions and oral arguments, and for the reasons that follow, it is recommended that the government's motion to dismiss be granted; that GEICO's motion for summary judgment be denied; and that plaintiff's cross-motion for summary judgment be granted to the extent it seeks a ruling declaring that GEICO's denial of coverage was improper.

## **BACKGROUND**

The following undisputed facts are derived from the parties' Statements of Material Facts and attachments thereto, submitted in connection with the pending motions.  *See* Dkt. ##21, 32, 41.

At approximately 5:45 p.m. on Monday, December 14, 2009, Dr. Lowenthal was involved in a motor vehicle accident at the intersection of Elm and Carlton Streets in the City of Buffalo, resulting in injuries to plaintiff.  Dkt. #15, ¶¶ 5, 9.  At the time of the accident, Dr. Lowenthal was in the second year of the Dermatology Residency Program at the University of Buffalo ("UB") School of Graduate Medical Education.  Dkt. # 34-1 (Lowenthal Dep.), p. 6.  She had just attended a lecture held at Roswell Park Cancer

Institute ("RPCI"), and was driving her vehicle to the Anchor Bar Restaurant, located a few blocks away from RPCI, to attend an informal "meet and greet" dinner scheduled by the faculty of the UB Dermatology Resident Program.   The dinner was regularly held on the evening prior to formal dermatology resident candidate interviews to provide an opportunity for candidates to meet with current residents and faculty members in an informal setting.  Dkt. #32 (Gov't Statement of Material Facts), ¶¶ 58-66.

Dr. Craig Miller is the Program Director for the UB Dermatology Resident Program.  In December 2009, Dr. Miller was considered to be a full-time employee of both UB (as an assistant professor and Dermatology Residency Program Director) and the VA (as Chief of Dermatology at the VA Hospital).  Dkt. #27-4 (Miller Dep.), pp. 7-8.

Dermatology residents in the UB program were assigned to work on an interchangeable (as opposed to successive) rotating basis at four participating local hospitals: VA Hospital,  RPCI, Buffalo General Hospital ("BGH"), and Women & Children's Hospital of Buffalo ("Children's Hospital").  *See* Dkt. #34-2 (Lowenthal Examination Under Oath), pp. 6-7.  Residents' salary is funded through "pay lines" established by these hospitals according to the number of positions required based on relative clinical activity.  In the year 2009, the VA Hospital funded four pay lines; RPCI funded two; and BGH and Children's Hospital each funded one.  Dkt. #43, Ex. D (Wolff Dep.), pp. 11, 13.   Paylines were randomly assigned by Dianne Wolff, the Program Administrator for the UB Dermatology Residency Program.  Dkt. #32, ¶ 19.  At the time of the accident at issue, Dr. Lowenthal's salary was funded through one of the VA Hospital's four pay lines.  Dkt. #32, ¶ 16.

Soon after the accident, Dr. Lowenthal gave notice to GEICO seeking coverage under automobile liability insurance number 4132801095.  Dkt. #15,¶¶ 13, 14; Dkt. #41-17 (Transcript of Recorded Interview, 12/16/2009).  By letter dated December 30, 2009, GEICO denied and disclaimed any liability or coverage obligation under the policy, stating as follows:

> This denial and disclaimer is being made because you were within the scope of your employment with the Veterans Administration, a United States government agency, at the time of the accident.  Since you were within the scope and course of your employment …, this matter falls within the Federal Tort Claims Act.  Per Exclusion 14, the policy does not apply to any person if protection is afforded under the provisions of the Federal Tort Claims Act.  Therefore, there is no coverage for this loss under policy #4132801095.

Dkt. #27-18.

On or about February 11, 2011, plaintiff Nadine James filed an administrative claim with the VA, which the VA denied by letter dated May 20, 2011.  Dkt. #1, ¶ 3; Dkt. #15, ¶ 3.  Plaintiff then commenced this FTCA action against the United States on August 25, 2011, alleging liability based on Dr. Lowenthal's status as "an employee, agent, and/or servant of the Department of Veteran's Affairs …."  Dkt. #1, ¶ 8.

The United States filed an Answer on October 28, 2011, containing an admission that at the time of the accident Dr. Lowenthal was an employee of the Department of Veterans Affairs, but otherwise denying responsibility for damages arising out of her conduct.  *See* Dkt. #5, ¶ 4.  The government also asserted several affirmative defenses, including lack of subject matter jurisdiction.  *Id*. at ¶ 19.

Plaintiff subsequently moved for leave to amend the complaint to add GEICO as a defendant in order to assert a cause of action for declaratory relief under the Declaratory Judgment Act, seeking a determination by this court as to the "real and

justiciable controversy" regarding whether Dr. Lowenthal was acting within the scope of her employment by the VA at the time of the accident, and hence, whether GEICO's denial and disclaimer of coverage was proper. *See* Dkt. #10. The government responded that it had no objection to the amendment, since the insurer's disclaimer was premised on the same factual basis as the government's claim that the Court lacks subject matter jurisdiction over the action. *See* Dkt. #13. This Court therefore granted leave to amend, and the Amended Complaint was filed on May 1, 2012, adding the cause of action for declaratory relief, and adding GEICO[1] and Dr. Lowenthal as defendants. Dkt. #15.

The parties then engaged in discovery on the scope of employment/subject matter jurisdiction issue, including the depositions of Dr. Lowenthal, Dr. Miller, and Ms. Wolff. Following this limited discovery, the government moved to dismiss the action against it for lack of subject matter jurisdiction under the FTCA, and both GEICO and plaintiff filed related motions for summary judgment. Upon full consideration of the materials submitted in connection with these motions, it is recommended that the government's motion be granted, GEICO's motion be denied, and plaintiff's cross-motion be granted in part.

## DISCUSSION

### I.    Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is the proper vehicle for determining whether this action was properly brought against the

---

[1]The Amended Complaint also added the Government Employees Insurance Company as a defendant, but this defendant was subsequently dismissed from the action, with prejudice, by stipulation of all parties entered pursuant to Fed. R. Civ. P. 41(a). Dkt. #43.

United States under the FTCA.  *See New York v. U.S. Army Corps of Engineers*, 896 F.

Supp. 2d 180, 188 (E.D.N.Y. 2012) (citing *Wake v. United States*, 89 F.3d 53, 57 (2d

Cir. 1996)); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A

case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it.").  On

a motion to dismiss under Rule 12(b)(1), the party asserting subject matter jurisdiction

bears the burden of proving by a preponderance of the evidence that jurisdiction exists.

*Harris v. Jacob Marsh, LLC*, 2012 WL 3655357, at *2 (W.D.N.Y. July 6, 2012) (citing

*Makarova*, 201 F.3d at 113).

## II.     FTCA

It is well established that "[t]he United States, as sovereign, is immune from suit

save as it consents to be sued ..., and the terms of its consent to be sued in any court

define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312

U.S. 584, 586 (1941), *quoted in Kwitek v. U.S. Postal Service*, 694 F. Supp. 2d 219,

223-24 (W.D.N.Y. 2010).  The FTCA provides a limited waiver of sovereign immunity

with respect to claims against the United States that seek money damages for personal

injury "caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment."  28 U.S.C.

§ 1346(b).  This waiver applies to "officers or employees of any federal agency ... and

persons acting on behalf of a federal agency in an official capacity."  28 U.S.C. § 2671.

"The government's waiver of sovereign immunity under the FTCA must be 'strictly

construed in favor of the government.' "  *Flanagan v. U.S.*, 430 F. Supp. 2d 106, 111

(W.D.N.Y. 2006) (quoting *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988)).

The government does not dispute that, at the time of the accident at issue here, Dr. Lowenthal was an employee of the VA, a federal agency.  However, the government contends that plaintiff cannot otherwise meet her burden to establish federal subject matter jurisdiction under the FTCA because the facts discovered in the case reveal that Dr. Lowenthal was not acting within the scope of her employment when the alleged tortious conduct occurred— *i.e.*, while she was driving her vehicle from the lecture at RPCI to the "meet and greet" at the Anchor Bar.

## III.   Scope of Employment

Under New York law, which the parties agree controls the Court's determination of  issues of liability and damages in this case, *see DiPirro v. U.S.*, 43 F. Supp. 2d 327, 341 (W.D.N.Y. 1999), an employer may be held vicariously liable for the tortious acts of its employees under a theory of *respondeat superior* if those acts were committed in the furtherance of the employer's business and within the scope of employment.  *See, e.g., Burlarley v. Wal–Mart Stores, Inc.*, 904 N.Y.S.2d 826, 827 (N.Y. App. Div., 3d Dep't, 2010), *cited in Chen Chao v. Holder*, 2013 WL 4458998, at *7 (E.D.N.Y. 2013).  The parties also agree that the standard for determining "scope of employment" under New York law is found in the case of *Lundberg v. State of New York*, 25 N.Y.2d 467 (1969), which holds that "[a]n employee acts in the scope of employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities."  *Id*. at 470.

-7-

*Lundberg* further held that, "[a]s a general rule, an employee driving to and from work is not acting in the scope of his employment." *Id.* at 471.  This is because in those circumstances, although the employee's activity may be "work motivated, the element of control is lacking." *Id.*; *see also Hamm v. United States*, 483 F.3d 135, 138 (2d Cir. 2007) (Army reservist commuting to training exercise not acting within scope of employment for purposes of subject matter jurisdiction under FTCA).  Exceptions to this "to and from work" rule have been recognized when the facts reveal that "the employer has some special interest or derives special benefit from the travel of the employee, the employer is exercising some control, directly or indirectly, over the employee while the employee is driving home, or the vehicle is being utilized in furtherance of the employer's enterprise." *McBride v. County of Schenectady*, 488 N.Y.S.2d 288, 290 (N.Y. App. Div., 3d Dep't, 1985) (citing cases).  As stated by the Court of Appeals:

> [A]n employee who uses [her] car in furtherance of [her] work is acting in
> the scope of [her] employment while driving home from [her] last business
> appointment, since such a person is working, and is under [her]
> employer's control, from the time [she] leaves the house in the morning
> until [she] returns at night.

*Lundberg*, 25 N.Y.2d at 470-71; *quoted in Swierczynski v O'Neill*, 840 N.Y.S.2d 855, 856 (N.Y. App. Div., 4th Dep't) (employee who received permission to commute home after field appointment no longer under employer's control), *leave to appeal denied*, 9 N.Y.3d 812 (2007).

In addition, New York courts have imposed *respondeat superior* liability under the "dual purpose principle," which recognizes that, even if the employee's negligent act occurs while deviating from work-designated activity:

> … consideration is to be given to the foreseeability of the occurrence
> arising from the deviation and employer responsibility in this area is broad

particularly where employee activity may be regarded as incidental to the furtherance of the employer's interest.  It is only where the travel by the employee would still have occurred even though the business purpose was canceled that an employer is freed from liability.

*Bazan v. Bohne*, 534 N.Y.S.2d 496, 498 (N.Y. App. Div., 3d Dep't, 1988); *see also*

*Cicatello v. Sobierajski*, 743 N.Y.S.2d 781, 782-83 (N.Y. App. Div., 4th Dep't, 2002)

(Buffalo Bills not vicariously liable for negligence of employee commuting home from

part-time job as game day concessionaire).  "[T]he crucial test is whether the

employment created the necessity for the travel, *i.e.*, the need to be on the particular

route on which the accident occurred.  Under that 'dual purpose principle,' if the travel

would still have occurred even if the business purpose had been canceled, then the

employer cannot be held liable."  *Cicatello*, 743 N.Y.S.2d at 782-83 (internal quotation

marks, alterations, and citations omitted).

In this case, as discussed above, the undisputed facts in the record establish

that in December 2009, Dr. Lowenthal was in the second year of the Dermatology

Residency Program at the UB School of Graduate Medical Education, working as a

dermatology resident at four local hospitals on an interchangeable, rotating basis.  Her

salary was funded through a payline established at the VA Hospital, pursuant to the

various program agreements entered into by UB and the VA regarding the duties and

responsibilities of the parties.  The paylines are established through all four participating

hospitals, and residents are randomly assigned to their particular payline by the

Program Administrator.  All dermatology residents rotate through all four of the paying

hospitals throughout the three-year term of their residency.

As set forth in the Medical Resident Employment Agreement ("MRE

Agreement") which Dr. Lowenthal entered into with the Department of Veteran Affairs

and which was in effect at the time of the accident, Dr. Lowenthal was generally

obligated as a VA Hospital employee to "devote [her] full professional time and best

efforts to provide medical services that are directly related to [her] participation as a

Resident in the Program and [to] perform those duties in a professional, competent and

cooperative manner consistent with [her] training and experience."  Dkt. 34-5, p. 2, ¶ 1.

Somewhat more specifically, Section 7(a)(iv) of the MRE Agreement requires

employees to "accept all duty assignments and attend all UB GME and Program

required courses, seminars, and classes …."  *Id.* at p. 4, ¶ 7(a)(iv).  Under Section 7(c)

of the MRE Agreement, the Hospital is responsible for the provision of "(I) professional

medical services by [the] Employee to patients at the Hospital and (ii) the Employee's

professional liability coverage at all times in which the Employee is providing

professional medical services as part of [her] Program duties for the Hospital."  *Id.* at p.

4, ¶ 7(c).  Under Section 7(d), the Residency Program is responsible for the provision of

"the educational curriculum, content and experience in accordance with the guidelines,

policies, and procedures set forth by the relevant accrediting body and/or UB …." *Id.* at

p. 5, ¶ 7(d); *see also* Dkt. #32, ¶¶ 32-37.

On December 14, 2009, Dr. Lowenthal saw patients in the clinic at Children's

Hospital during the morning, working there until noon.  Dkt. #32, ¶ 44.  She then went

home to study, and was "on-call" at the VA Hospital until 5:00 p.m.  *Id.* at ¶ 45.  She did

not work at the VA Hospital that day, nor did she see any patients that were affiliated

with the VA or review any of their charts.  *Id.* at 46-48.  She had not performed any

residency duties at the VA Hospital since December 10, four days prior to the accident.

*Id.* at ¶ 54.

After studying at home on December 14th, Dr. Lowenthal drove her car to RPCI to attend a lecture on Chemical Peels/Dermabrasion, required as a component of the residency program, which commenced at 5:00 p.m.  *Id.* at ¶¶ 55-59.  At approximately 5:45 p.m., she left RPCI and got in her car to drive to the "meet and greet" dinner at the Anchor Bar, located a few blocks away at 1047 Main Street.  The accident at issue occurred while Dr. Lowenthal was en route to the Anchor Bar.

As already indicated, the dinner at the Anchor Bar was scheduled by UB Dermatology Residency Program faculty as an opportunity for the faculty members and current residents to meet with new residency candidates in a relaxed, informal setting on the evening prior to the formal interviews.  *Id.* at ¶¶ 24-26, 61-66.  There is nothing in the contractual language referenced above, or elsewhere in the record before the Court, to show or suggest that Dr. Lowenthal's (or any dermatology resident's) attendance at the dinner was required as an obligation of employment by the VA, or as a condition of her acceptance of salary funded by one of the four VA paylines.  Indeed, as indicated by the deposition testimony of Dr. Miller, residents' attendance at the dinner was not considered to be mandatory, but rather was compelled by Dr. Miller's "expectation" that the current residents attend so that they could interact with the new candidates and provide constructive input to assist faculty in the resident selection process.  Dkt. #27-4, pp. 37-38; Dkt. #32, ¶¶ 29-30.  Dr. Lowenthal did not attend the dinner on December 14, 2009, and suffered no disciplinary consequences or diminution of salary as a result.  Dkt. #27-4, pp. 46-47.

In addition, the Court's review of the record reveal no facts that could reasonably be construed as evidence that the VA was involved in any way with sponsoring[2] or scheduling the dinner, or somehow otherwise exercised some direct or indirect control over Dr. Lowenthal's activities while she was driving her own vehicle from RPCI to the Anchor Bar.  The record is similarly devoid of any information to indicate that the VA itself expected to derive any special benefit from Dr. Lowenthal's attendance at the Anchor Bar dinner, apart from the general benefit to the Dermatology Residency Program's candidate selection process; that Dr. Lowenthal was utilizing her vehicle in furtherance of the VA's enterprise; or any other circumstances to suggest that Dr. Lowenthal's activities at the time of the accident placed the occurrence within any recognized exception to the general rule that an employee driving to and from work is not acting within the scope of employment.

To the contrary, the record shows that Dr. Lowenthal's obligations regarding her work at the VA Hospital on December 14th were completed upon the conclusion of her on-call duty at 5:00 p.m., at which time she was free to attend the lecture at RPCI—and later, the "meet and greet" dinner—as part of her overall obligation to complete the Residency Program curriculum.  There is simply no factual basis upon which a reasonable jury could find that Dr. Lowenthal's employment by the VA created the need for her to be on the particular route on which the accident occurred.  As in the *Cicatello* case cited above, once the employee was no longer acting in furtherance of any work-related duty that she owed to the employer, and was therefore no longer under the

---

[2]According to Ms. Wolff, the dinner at the Anchor Bar was paid for from an account maintained at RPCI designated for resident activities.  Dkt. #34-4, p. 32.

employer's control, the employer cannot be held vicariously liable for the employee's negligence during travel which "would still have occurred even though the business purpose was canceled."  *Bazan*, 534 N.Y.S.2d at 498 (quoted in *Cicatello*, 743 N.Y.S.2d at 782-83).

Finally, the Court recognizes GEICO's reliance on Dr. Miller's "To Whom It May Concern" letter, dated January 12, 2010, stating that Dr. Lowenthal "was coming from and going to work-related meetings on 12/14/09 at the time of the accident."  Dkt. #27-16.  Dr. Miller signed the letter as "Chief of Dermatology, Buffalo Veteran's Administration."  *Id.*  However, as discussed above, Dr. Miller's full-time duties at the VA overlapped with his full-time duties as Dermatology Residency Program Director, and there is no other information in the record before the Court to suggest that his statement should be directly attributable to the VA and interpreted as an admission that Dr. Lowenthal was acting within the scope of her employment at the time of the accident.

Based on this analysis, and considering the undisputed facts in the record in the light most favorable to the parties opposing the government's motion, it is this Court's conclusion that Dr. Lowenthal was not acting in furtherance of any duty owed to the VA at the time of the occurrence at issue, but rather, was driving from RPCI to the Anchor Bar to satisfy the UB Residency Program faculty's "expectation" that she attend the dinner to assist in the selection process for new residents.  Therefore, as in the *Lundberg* case, the employer did not have "the power to control" the employee at the time of the accident since it took place "after the close of work" and at a time when the employee was "free to do as [s]he pleased."  *Lundberg*, 25 N.Y. 2d at 472.  In the

absence of control, a finding of employer liability "would be patently unfair and beyond the scope of the doctrine of *respondeat superior*." *Id.* at 472.

Accordingly, it is this Court's proposed finding that Dr. Lowenthal was not acting within the scope of her office or employment by the VA at the time of the occurrence at issue in this case, for the purpose of imposing liability on the United States under the limited waiver of sovereign immunity provided by 28 U.S.C. § 1346(b).

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1.     The government's motion (Dkt. #30) to dismiss the complaint for lack of subject matter jurisdiction under the FTCA be granted;

2.     GEICO's motion (Dkt. #27) for summary judgment be denied; and,

3.     Plaintiff's cross-motion for summary judgment (Dkt. #39) be granted to the extent it seeks a ruling pursuant to the Declaratory Judgment Act declaring null and void GEICO's denial and disclaimer of coverage on the basis of a policy exclusion for persons protected under the FTCA, and denied in all other respects.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report,  Recommendation and Order to the attorneys for the parties.


        **SO ORDERED.**


**DATED:**      **Buffalo, New York**
              **January 3, 2014**

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**